# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| John M. Solberg, | Case No. 23-cv-3568 (ECT/DTS) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| B. Eischen et al., | |
| Respondents. | |

Petitioner John M. Solberg brings this *pro se* habeas petition pursuant to 28 U.S.C. § 2241 asserting that the Federal Bureau of Prisons (BOP) is miscalculating his First Step Act Time Credits (FTCs). For the reasons discussed below, the Court recommends his petition be denied.

## FINDINGS OF FACT

On January 5, 2023, Petitioner Solberg was sentenced to a 30-month term of incarceration, followed by a 3-year term of supervision, for mail fraud. Dkt. No. 13-1 at 2. Between January 5, 2023, and April 16, 2023, he was housed both in a U.S. Marshals Services (USMS) contract facility and at MCC Chicago, a BOP facility with allocated USMS bedspace. Dkt. No. 13 ¶ 15. On April 17, 2023, he was transferred to Federal Prison Camp Duluth (FPC Duluth), the BOP facility designated for service of his sentence, where he remains. Dkt. No. 13-6. Between April 17, 2023, and November 11, 2023, Solberg earned FTCs at a rate of 10 per 30 days of programming; from November 11, 2023, onward, he has earned FTCs at a rate of 15 per 30 days of programming. Dkt. No. 13-2.

Solberg currently has a projected FSA release date of September 16, 2024.[1] His conditional FSA release date is July 18, 2024. Dkt. No. 13 ¶ 18. The BOP originally claimed it would recommend a 90-day placement in a Residential Reentry Center (RRC) and, pending consideration of the facility's resources, intended to transfer Solberg to an RRC on April 19, 2024. *Id.* ¶ 26. Solberg claims the BOP later told him it would not transfer him by that date, but it did not provide specific reasons for that decision. *See* Dkt. No. 28.

## CONCLUSIONS OF LAW

Solberg filed this habeas petition on November 17, 2023, arguing that (1) he should have been earning FTCs from the date he was sentenced rather than the date he arrived at FPC Duluth, and (2) the BOP should calculate his FTCs "up front" rather than "as earned." Dkt. No. 1. He has since filed additional memoranda and exhibits introducing new arguments to support the claims in his habeas petition. *See* Dkt. Nos. 19-25, 28.

The First Step Act (FSA) provides that eligible federal prisoners may earn FTCs during their incarceration by successfully participating in evidence-based recidivism reduction (EBRR) programming or productive activities (PAs). 18 U.S.C. § 3632(d)(4). "'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." 28 C.F.R. § 523.41(c)(2). The BOP's Risk and Needs Assessment System consists of two parts: the Prisoner

---

[1] Federal Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/ (last visited May 6, 2024).

Assessment Tool Targeting Estimated Risk and Needs (PATTERN), and the Standardized Prisoner Assessment for Reduction in Criminality (SPARC-13). *See* BOP Program Statement 5410.01. PATTERN is generally completed within 28 days of the inmate's arrival at their designated facility as part of the initial classification process; SPARC-13 requires an inmate's active participation and is generally completed within 30 days of arrival at their designated facility. *Id.*

I. **FTCs Earned Before Arriving at FPC Duluth**

Solberg argues that he is entitled to earn FTCs from the date of sentencing (January 5, 2023) rather than the date he arrived at FPC Duluth (April 17, 2023). Respondents counter that inmates held in custody after sentencing are not entitled to earn FTCs prior to arriving at "the initially designated Bureau facility where the sentence will be served," which for Solberg is FPC Duluth. Dkt. No. 12 at 20 (quoting 28 C.F.R. § 523.42(a)). Respondents also claim that Solberg did not participate in any EBRR programs or PAs prior to arriving at FPC Duluth, so he did not earn any FTCs during that time regardless of his eligibility.

The Court finds that Solberg is not entitled to FTCs for the time spent in custody prior to his arrival at FPC Duluth because he did not participate in qualifying programming during that period. The issue here is not whether Solberg was *eligible* to earn FTCs as of the date of sentencing,[2] but whether he "successfully complete[d] evidence-based

---

[2] Respondents ask this Court to afford deference to the BOP's interpretation of the FSA's eligibility provision. The BOP's interpretation, reflected in 28 C.F.R. § 523.42(a), states that "[a]n eligible inmate begins earning [FTCs] after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." Solberg argues that this interpretation

3

recidivism reduction programming or productive activities." 18 U.S.C. § 3632; *see* 28 C.F.R. § 523.42(b)(3) (an eligible inmate "may earn [FTCs] if he or she is successfully participating in EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment"). Both the regulation and the statute require an inmate to participate in qualifying programming or activities to earn FTCs. Thus, the Court need not determine whether Solberg's term of imprisonment had "commenced" such that he was eligible to earn FTCs prior to his arrival at FPC Duluth, because there is no evidence that he completed EBRR programs or PAs during that time.

The court addressed this same issue in *Martinez v. Eischen*, No. 24-cv-637, 2024 WL 1598772 (D. Minn. Apr. 12, 2024), ultimately finding that the petitioner was not entitled to any FTCs for time spent in custody prior to arriving at his designated facility. The true inquiry was not whether he was eligible to earn FTCs during that time, but whether he had participated in EBRR programs or PAs for which he should have earned FTCs. *Id.* at *2. Because the petitioner offered no evidence that he had successfully completed qualifying programs or activities, he was essentially asking the court "to unilaterally grant him FTCs he believes he would have earned, had he been able to begin qualified programming sooner. Such relief is plainly barred by the statute because the First Step Act is explicitly clear that FTCs are only granted when a prisoner 'successfully

---

contradicts the plain text of 18 U.S.C. § 3585(a), which states that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Whether the regulation contradicts the text of the statute is outside the purview of this case, because an eligible inmate whose sentence has commenced must still complete qualifying programming to earn FTCs.

4

completes' approved programming or activities." *Id.* (quoting 18 U.S.C. § 3632(d)(4)(A)). Absent evidence that the petitioner successfully completed such programming, "the reasonableness of the broad BOP policy concerning the commencement of FTC accruals [could not] be adjudicated on th[e] record." *Id.*

The same is true here. There is no evidence in the record that Solberg successfully completed qualifying programs or activities before arriving in FPC Duluth. Though Solberg argues that he completed the SPARC-13 survey, which was the only relevant activity available to him prior to his transfer to FPC Duluth, this survey is not an EBRR program or PA; it is instead part of the risk and needs assessment generally completed during the initial classification process. *See* BOP Program Statement 5410.01. The Court acknowledges Solberg's frustration that the BOP did not assess his risks and needs and make programming available to him before then. Yet whether he would have successfully participated in any available EBRR programs or PAs remains hypothetical, and the Court cannot adjudicate the reasonableness of BOP policies on that basis. *See Martinez*, 2024 WL 1598772, at *2 (overruling the petitioner's objections to the "policy that prevented him from beginning FTC programming in the months before he arrived at FPC Duluth"). The validity of the BOP's policy regarding when an inmate begins accruing FTCs is not properly before the Court.[3] Additionally, FTCs cannot be "regarded as an entitlement," but rather are "a benefit that a prisoner might or might not be able to earn at various times

---

[3] Absent evidence that Solberg participated in qualifying programming such that he would have earned FTCs had he been in "earning status," the Court can provide no relief by deciding that he was eligible to do so. *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").

5

during his detention." *Fiorito v. Fikes*, No. 22-cv-0749, 2022 WL 16699472, at *6 (D. Minn. Nov. 3, 2022), *aff'd*, No. 23-1006, 2023 WL 4841966 (8th Cir. July 28, 2023). Thus, while Solberg may not have been able to earn credits until his transfer to FPC Duluth, he was not "denied" FTCs to which he was entitled. The Court recommends this claim be denied.

## II. FTCs Calculated "Up Front" or "As Earned"

Solberg argues that FTCs should be calculated "in the same 'up-front' manner as GTCs." Dkt. No. 1 at 14. Under this method, FTCs would be calculated based on the total sentence imposed, and the FTCs an inmate expects to earn in the future would be available to apply toward a sentence reduction. Solberg contends that the BOP is improperly calculating his FTCs as he earns them, and if the FTCs were instead calculated "up front," he would be entitled to immediate release.

The Court finds no error in the BOP's calculation of Solberg's FTCs. Calculating FTCs "as earned" is consistent with the language and purpose of the FSA. First, under the language of the statute, an inmate must complete qualifying programs or activities to earn FTCs. *See* 18 U.S.C. § 3632(d)(4) (an eligible inmate "who successfully completes evidence-based recidivism reduction programming or productive activities[] shall earn time credits as follows . . ."). Thus, inmates do not have any present entitlement to future FTCs. *See Fiorito*, 2022 WL 16699472, at *6 ("[U]nlike good-time credit accumulated under § 3624(b), FTCs are not a general entitlement. Instead, prisoners are merely afforded the opportunity to earn FTCs by participating in recidivism-reduction programming."). Second, FTCs can be lost, inmates can become ineligible to earn them, and the rate of accrual can change; an "up-front" calculation would therefore be entirely

6

hypothetical. Finally, the purpose of awarding time credits under the FSA is to incentivize inmates to participate in evidence-based recidivism reduction programs and productive activities. *See* 18 U.S.C. § 3632(d). It would make little sense, then, to award FTCs for anything other than actual participation.

The court in *Smith* addressed a similar argument. *Smith v. Eischen*, No. 22-cv-1704, 2023 WL 3170436. The petitioner there argued that the BOP wrongly failed to "aggregate and apply his [FTCs] with other avenues for early release, including Good Conduct Time Credits," and that his FTCs "should be reflected in his Percent of Statutory Term Served." *Id.* at *5. The court rejected this argument, noting that FTCs "are conditional benefits contingent on numerous factors that may result in the inmate's inability to apply" them toward an early release. *Id.* Thus, FTCs "are not a general entitlement and the mere opportunity to earn credit toward the satisfaction of a sentence does not create a protected liberty interest." *Id.* Solberg's argument fails for the same reason: he is not guaranteed to earn a certain number of FTCs over the course of his detention, so he does not have a protected interest in future FTCs. Because he has neither an interest in, nor an entitlement to, future FTCs, there is nothing to apply "up front."

Solberg argues that because inmates can earn FTCs while in pre-release custody, the only way to account for FTCs earned in an RRC is to award them to the inmate before he is transferred to the RRC. *See Mark v. Birkholz*, No. 21-cv-1418, 2022 WL 11321123, at *2 (D. Minn. Aug. 4, 2022) (noting that the BOP's Final Rule on FSA Time Credits allows a prisoner to continue earning FTCs while in pre-release custody). However, an RRC is a place of confinement. *See Williams v. Birkholz*, No. 20-cv-2190, 2021 WL

7

4155614, at *6 n.6 (D. Minn. July 20, 2021), *report and recommendation adopted*, 2021 WL 4155013 (D. Minn. Sept. 13, 2021). Because pre-release custody is still custody, any FTCs Solberg earns after he is transferred to an RRC are presumably applicable toward transfer to supervised release. *See* FSA Time Credits, 87 Fed. Reg. 2705-01 (Jan. 19, 2022); 18 U.S.C. 3632(d)(4)(C). This argument does not support applying FTCs "up front."

Finally, Solberg argues that the BOP's method of calculating FTCs "as earned" is contrary to BOP Program Statement 5410.01, which provides that the BOP will estimate an inmate's FSA conditional projected release date by calculating the maximum number of potential FTCs that the inmate may earn during their sentence. Dkt. No. 19 at 2-4. This program statement, Solberg argues, refers to an "up-front" calculation. But the calculation referenced in Program Statement 5410.01 offers only an estimate of the FTCs an inmate may earn; it does not provide for "up-front" application of FTCs not yet earned. Moreover, even if Solberg was correct, "deviations from [a] BOP program statement do not provide a basis for habeas corpus relief." *Young v. Eischen*, No. 23-cv-3227, 2024 WL 418702, at *2 (D. Minn. Jan. 3, 2024), *report and recommendation adopted*, 2024 WL 416445 (D. Minn. Feb. 5, 2024); *see Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("[A] habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law."). The Court finds that Solberg is not entitled to an "up-front" calculation and the BOP is correctly calculating his FTCs as he earns them. This claim should be denied.

### III.     Delayed Transfer to an RRC

Solberg argues that the BOP originally informed him it would recommend he be transferred to an RRC on April 19, 2024, but recently told him he would not be transferred on that date. Pursuant to 18 U.S.C. § 3624(c), the BOP is obligated to formulate a pre-release plan to facilitate an inmate's transition from prison. *See Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004). This plan may include placement in an RRC for up to twelve months. When formulating a pre-release plan, the BOP considers:

> (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence: (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b). However, "[i]nmates are not entitled to placement in an RRC, nor are they entitled to any particular amount of time in an RRC." *Morrow v. Eischen*, No. 23-cv-2137, 2024 WL 1939196, at *2 (D. Minn. Apr. 8, 2024), *report and recommendation adopted*, 2024 WL 1932537 (D. Minn. May 1, 2024). This Court lacks jurisdiction to review or dictate the BOP's placement decisions. 18 U.S.C. § 3621(b); *see United States v. Martinez-Gutierrez*, No. 09-cr-49(11), 2013 WL 1435154, at *3 (D. Minn. Apr. 9, 2013) ("The amount of time spent in an RRC, if any, is a determination squarely within the discretion of the BOP.").

Solberg argues that the BOP has deliberately delayed transferring him to an RRC in retaliation for his filing a habeas petition. Dkt. No. 28. While Solberg alleges that the

9

BOP is acting out of "spite" due to his attempts to "correct" its method of calculating FTCs, he does not allege beyond a speculative level that this is causally connected to its decision to delay his transfer to an RRC. *Halfacre v. Cruseturner*, 299 F. App'x 609, at *1 (8th Cir. 2008) ("[A]llegations of retaliation must be more than speculative and conclusory."). Nor does he ask for any relief related to this assertion. *See Jun v. FPC-Duluth*, No. 22-cv-2704, 2023 WL 5917739, at *11 n.6 (D. Minn. June 30, 2023), *report and recommendation adopted sub nom. Jun v. Eischen*, 2023 WL 5899128 (D. Minn. Sept. 11, 2023) (declining to address the petitioner's argument that the BOP delayed submitting a referral for home confinement in retaliation for his filing a habeas petition, as it was was unclear "whether [the argument] is even cognizable in a habeas petition"). Instead, Solberg cites the alleged retaliatory motive as evidence of the BOP's bad faith in delaying his transfer to an RRC. But the BOP informed Solberg when it gave its original anticipated date that transfer on that date was contingent on consideration of the recommended RRC's available resources. Nothing in the record suggests that the BOP's decision not to transfer Solberg on the quoted date was motivated by bad faith or retaliatory animus, rather than by its consideration of the factors listed in 18 U.S.C. § 3621(b).[4]

---

[4] *See Miller v. Whitehead*, 527 F.3d 752, 758 (8th Cir. 2008) (holding that Section 3621(b) "does not require the BOP to provide prisoners with a detailed statutory analysis whenever a prisoner requests an immediate transfer to an RRC" and finding "no evidence that the warden acted other than in good faith when he concluded that immediate RRC placement was not appropriate"); *Elwood*, 386 F.3d at 847 (noting that the BOP's obligation to formulate a pre-release plan is "qualified by the phrase 'to the extent practicable,'" and various factors "may make it impractical to transfer a prisoner to a[n] RRC] for all or even part of the transition period").

## IV.  Evidentiary Hearing

Because Solberg's petition can be resolved on the record, an evidentiary hearing is unnecessary. *See Wallace v. Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983) ("[D]ismissal of the habeas petition without a hearing is proper where . . . the dispute can be resolved on the basis of the record.") (citation omitted).

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1. Petitioner John M. Solberg's habeas petition [Dkt. No. 1] be DENIED.

2. This matter be DISMISSED WITHOUT PREJUDICE.

Dated: May 7, 2024                    ___s/David T. Schultz_____
                                      DAVID T. SCHULTZ
                                      U.S. Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).